IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | 1-17-CR-44 RP |
| ULISES PORCAYO-JAIMES | § § | |

## ORDER

The above-entitled case was opened on January 27, 2017, upon the filing of a complaint naming Defendant Ulises Porcayo-Jaimes as an alien who had reentered the United States after a prior removal. Defendant was then indicted on February 2, 2017, and charged with violating 8 U.S.C. § 1326, which governs the reentry of previously removed aliens.

Defendant filed a motion to dismiss the indictment on May 2, 2017. (Mot., Dkt. 21). The Government responded on May 11, 2017. (Resp., Dkt. 22). After considering the parties' submissions, the record in this case, and the applicable law, the court concludes that Defendant's motion should be **DENIED**. The court sets out the reasons for its decision below.

## I. BACKGROUND

Defendant, who was born in 1991, came to the United States as a child. He has never had legal status, and was permitted to voluntarily return to Mexico in November 2007.[1] At some point he reentered the United States, and in November 2008 was arrested for and subsequently pled guilty to burglary of a habitation in violation of Texas Penal Code § 30.02(a). He was then sentenced to three years confinement under the supervision of the Texas Department of Criminal Justice.

One year later, in late 2009, the Department of Homeland Security ("DHS") served Defendant with a Notice of Intent to Issue a Final Administrative Removal Order ("the Notice").

---

[1] Defendant argues that the 2007 voluntary departure was in violation of various of his rights but otherwise concedes that it is relevant here only so far as it "could later have been argued grounds for voluntary departure instead of deportation in 2009." (Mot., Dkt. 21 at 3). The 2009 removal proceedings are discussed *infra*.

1

The Notice stated that burglary of a habitation qualified as an "aggravated felony" under Immigration and Nationality Act ("INA") § 101(a)(43)(G), 8 U.S.C. § 1101(a)(43)(G), rendering Defendant amendable to expedited removal proceedings. Defendant indicated that he did not wish to contest the removal, and DHS issued a Final Administrative Removal Order ("FARO") on November 12, 2009. Defendant was thereafter removed from the United States on September 12, 2011, upon completion of his three year sentence.

At an unknown time and place, Defendant again reentered the United States. He was arrested in April 2016 in connection with and later pled guilty to assault family violence in violation of Texas Penal Code § 22.01(a)(1). Those proceedings attracted the attention of Immigration and Customs Enforcement and led to the current indictment charging Defendant with reentering the United States after a prior removal. Defendant has now moved to dismiss the indictment on the ground that the 2009 FARO was invalid and must be suppressed.

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b) allows the court to hear at the pretrial stage any defense that may be determined without a trial on the merits. A court should not dismiss an indictment if it alleges every element of the offense. *See United States v. Guzman-Ocampo*, 236 F.3d 233, 236 (5th Cir. 2000). However, indictments for illegal reentry under 8 U.S.C. § 1326 are subject to dismissal where the underlying removal proceeding, which serves as an element of the criminal offense, was not conducted in conformity with due process. For example, as the Supreme Court explained in *United States v. Mendoza-Lopez*, "where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." 481 U.S. 828, 838 (1987).

The Fifth Circuit has interpreted *Mendoza-Lopez* to "require[] an alien challenging a prior removal to establish that (1) the removal hearing was fundamentally unfair; (2) the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the order; and (3) the procedural deficiencies caused the alien actual prejudice." *United States v. Lopez-Ortiz*, 313 F.3d 225, 229 (5th Cir. 2002). "[T]his interpretation of *Mendoza-Lopez* effectively was codified" in 8 U.S.C. § 1326(d), *see id.*, which additionally requires that "the alien [have] exhausted any administrative remedies that may have been available to seek relief against the order" sought to be collaterally attacked. *See* 8 U.S.C. § 1326(d);[2] *United States v. Hernandez-Ramirez*, 2016 WL 7156772, at *1 (5th Cir. Dec. 7, 2016) (in addition to the three requirements set out in *Lopez-Ortiz*, a defendant "must also exhaust the administrative remedies set out in 8 U.S.C. § 1326(d)(1)"). If a defendant is successful in challenging a prior removal order, it cannot be used to establish the element of prior removal for purposes of an 8 U.S.C. § 1326 prosecution. *See Lopez-Ortiz*, 313 F.3d at 229.

### III. DISCUSSION

The removal order that Defendant challenges here is the 2009 FARO, which was issued pursuant to the expedited removal proceedings provided for under INA § 238(b), U.S.C. § 1228(b). "The prerequisites for expedited removal are that the person be (1) an alien, (2) who has committed a crime covered in 8 U.S.C. § 1227(a)(2)(A)(iii) (aggravated felony), and (3) has not been admitted, even conditionally, as a lawful permanent resident." *Valdiviez-Hernandez v. Holder*, 739 F.3d 184, 188 (5th Cir. 2013). "Thus, INA § 238(b) applies to aliens who are not lawful permanent residents and

---

[2] 8 U.S.C. 1326(d) provides:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that—
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair.

3

allows DHS to determine the removability of such aliens under . . . 8 U.S.C. § 1227(a)(2)(A)(iii), and issue a removal order without referring the case to an [immigration judge ("IJ")] (unless the alien requests referral to an IJ)." *Umude-Louis v. Holder*, 368 F. App'x 544, 546 (5th Cir. 2010). "An alien who is subject to a [FARO] issued under INA § 238(b), 8 U.S.C. § 1228(b) is ineligible for any relief from removal that is discretionary with the Attorney General," *id.*; 8 U.S.C. § 1228(b), such as voluntary departure, *see* 8 U.S.C. § 1229c ("The Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense . . . in lieu of being subject to [normal removal proceedings] . . . if the alien is not deportable [on the basis of having committed an aggravated felony].")

Defendant argues that the 2009 FARO was invalid because the immigration official in charge erroneously identified burglary of a habitation as an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(G), thereby improperly initiating expedited removal proceedings. But for this error, Defendant contends, he would not have signed away his right to contest the removal, would have appeared before an IJ, and would have had a reasonably likely chance of obtaining a discretionary order of voluntary departure. He argues that these circumstances demonstrate all the criteria necessary for a successful collateral attack on the 2009 FARO.

The Government responds that the immigration officer did not err in labeling Defendant's offense an aggravated felony. It further argues that even if the immigration officer did err, Defendant cannot prevail because (1) a failure to notify him of his eligibility for discretionary relief does not render his prior removal invalid; and (2) in any event, Defendant would not have been reasonably likely to obtain an order of voluntary departure.

For the reasons given below, the court agrees with the Government that DHS did not misclassify Defendant's offense as an aggravated felony. Because Defendant's argument is based

entirely on the purported misclassification and the consequences thereof, the court's contrary finding is dispositive of Defendant's motion.

### a. Whether Defendant's Conviction was for an "Aggravated Felony"

Defendant was placed into expedited removal proceedings because DHS identified his 2008 Texas conviction for "burglary of a habitation" as an "aggravated felony." The Notice and FARO indicate that DHS reached this conclusion based on 8 U.S.C. § 1101(a)(43)(G), which defines "aggravated felony" to encompass any "burglary offense for which the term of imprisonment [*sic*] at least one year." While it seems obvious at first blush that "burglary of a habitation" qualifies as a "burglary," the problem presented here arises from the fact that Texas Penal Code § 30.02(a), under which Defendant was convicted, provides for three different types of burglary:

> (a) A person commits an offense if, without the effective consent of the owner, the person:
> (1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault; or
> (2) remains concealed, with intent to commit a felony, theft, or an assault, in a building or habitation; or
> (3) enters a building or habitation and commits or attempts to commit a felony, theft, or an assault.

Tex. Penal Code § 30.02(a).

As explained below, the differences between these types of burglary render the statute "divisible" for purposes of determining whether Defendant was convicted of an aggravated felony pursuant to 8 U.S.C. § 1101(a)(43)(G). This is because the offense listed in § 30.02(a)(1) qualifies as an aggravated felony under that subparagraph, while the offense listed in § 30.02(a)(3) does not. It is therefore possible to be convicted for the "burglary of a habitation" that is not an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(G). Defendant thus argues that he only pleaded guilty to the non-aggravated version of the offense, while the Government argues that he pleaded guilty to both.

"When the Government alleges that a state conviction qualifies as an 'aggravated felony' under the INA, [courts] generally employ a 'categorical approach' to determine whether the state offense is comparable to an offense listed in the INA." *Moncrieffe v. Holder,* —— U.S. ——, 133 S. Ct. 1678, 1684 (2013). "Under this approach [courts] look 'not to the facts of the particular prior case,' but instead to whether 'the state statute defining the crime of conviction' categorically fits within the 'generic' federal definition of a corresponding aggravated felony." *Id.* (quoting *Gonzales v. Duenas–Alvarez,* 549 U.S. 183, 186 (2007)). "[A] state offense is a categorical match with a generic federal offense only if a conviction of the state offense 'necessarily' involved . . . facts equating to [the] generic [federal offense].'" *Id.* (quoting *Shephard v. United States,* 544 U.S. 13, 24 (2005) (plurality opinion)). "Whether the noncitizen's actual conduct involved such facts 'is quite irrelevant.'" *Id.* (quoting *United States ex rel. Guarino v. Uhl*, 107 F.2d 399, 400 (2d Cir. 1939) (L. Hand, J.)).

"The categorical approach, however, is subject to certain qualifications." *Garcia v. Holder*, 756 F.3d 839, 843 (5th Cir. 2014) (citing *Moncrieffe*, 133 S. Ct. at 1684). "One such qualification is when a state conviction is obtained under a divisible criminal statute." *Id.* (citing *Descamps v. United States,* ––– U.S. ——, 133 S. Ct. 2276, 2283–84 (2013)). A "statute is divisible" when it "comprises multiple, alternative versions of the crime," at least one of which is a categorical match with the generic crime in question and one of which is not. *See Descamps*, 133 S. Ct. at 2284. In these circumstances, "a later [reviewing] court cannot tell, without reviewing something more," whether a conviction under that statute corresponded to the generic or non-generic form of the crime. *Id.* Thus, "when a state conviction is obtained under a divisible criminal statute," a reviewing court applies the "modified categorical approach." *Id.* "The modified categorical approach 'serves a limited function: It helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which elements played a part in the [defendant's] conviction.'" *Garcia*, 756 F.3d at 843 (quoting *Descamps*, 133 S. Ct. at 2283). "Under this test . . . the court can look at so-

6

called *Shepard* documents,[3] which include the charging document, written judicial confession, and judgment." *United States v. Conde-Castaneda*, 753 F.3d 172, 176 (5th Cir. 2014). The court may also look to any uncontradicted facts in other court documents, such as a charging affidavit, if the defendant stipulated to those documents' use in establishing the factual basis for the offense. *See United States v. Castillo-Morales*, 507 F.3d 873, 876 (5th Cir. 2007). After consulting the *Shepard* documents, "[t]he court can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime." *Descamps*, 133 S. Ct. at 2281.

Accordingly, the court must begin by determining the "'generic' federal definition" of the "corresponding aggravated felony," which in this case is "burglary." *See Moncrieffe*, 133 S. Ct. 1684; 8 U.S.C. § 1101(a)(43)(G). "[T]he generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Lopez-Elias v. Reno*, 209 F.3d 788, 792 (5th Cir. 2000) (quoting *Taylor v. United States*, 495 U.S. 575, 598 (1990)). Given this definition, the Fifth Circuit has determined that Texas Penal Code "§ 30.02(a) is a divisible statute—one alternative . . . matches an element in the generic offense [of burglary of a dwelling], but the other . . . does not." *See Conde-Castaneda*, 753 F.3d at 176 (citation omitted). In other words, "[t]he generic offense of burglary of a dwelling requires entering a habitation with the intent to commit a crime," which "§ 30.02(a)(1) expressly requires," while "§ 30.02(a)(3) lacks such an intent requirement and consequently does not qualify as a 'burglary of a dwelling.'" *Conde-Castaneda*, 753 F.3d at 176 (citing *United States v. Constante*, 544 F.3d 584, 587 (5th Cir. 2008); *United States v. Garcia–Mendez*, 420 F.3d

---

[3] This appellation derives from *Shepard v. United States*, in which the Supreme Court explained that when multiple versions of an offense are contained in the statute of conviction, a court may determine which of those versions a defendant was convicted under by looking to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some other comparable judicial record of this information." 544 U.S. 13, 26 (2005).

454, 456–57 (5th Cir. 2005)). As a result, the modified categorical approach applies here, and the court looks to the *Shepard* documents available in the record in order to determine whether § 30.02(a)(1) or § 30.02(a)(3) formed the basis of Defendant's prior conviction.

Defendant's judgment states only that he was convicted of "burglary of a habitation" pursuant to § 30.02(a). (Dkt. 22, Ex. 1 at 4). In contrast, the heading of the indictment indicates that he was charged with "Burglary – Habitation Entry with Commission of / Intent to Commit Theft," and the language in the indictment's body tracks that of both § 30.02(a)(1) and § 30.02(a)(3). (*Id.* at 2). Next, his judicial confession states in pertinent part: (1) "You are charged with the felony offense of: Burglary of Habitation"; (2) "[I] consent to the introduction of evidence by live testimony, affidavits, written statements of witnesses or any other documentary evidence sufficient to establish my guilt"; and (3) "I confess and admit that I committed each and every element of the charged offense or the reduced offense now charged against me in this case and, if applicable, that I committed the offense(s) and/or acts alleged in the enhancement paragraph(s)." (*Id.*, Ex. 2 at 4). Lastly, the arrest affidavit asserts that a Travis County Sheriff's Deputy responded to a 911 burglary call and upon arrival found Defendant hiding behind a tree. (*Id.*, Ex 1 at 6). The officer placed Defendant in custody and Mirandized him. (*Id.*). Defendant then admitted that he and two others "burglarized the residence" in question. (*Id.*). When the deputy checked Defendant's pockets, he found "22 items (mostly jewelry) that [Defendant] admitted to stealing from the residence." (*Id.*).

Defendant argues that "[t]he indictment alleges multiple offenses, and the judicial admission does not clarify which particular offense [he] elected to admit." (Dkt. 21 at 8). He points to the fact that the judicial confession states that he admitted to *the* offense charged, in the singular, and that the court should therefore consider him to have pled guilty only under § 30.02(a)(3), which is the "least culpable act satisfying the count of conviction." (*Id.* at 8–9); *see United States v. Mohr*, 554 F.3d 604, 607–08 (5th Cir. 2009) ("Where the indictment . . . may be read to cover both violent and non-

8

violent conduct, the court should proceed with the assumption that the conduct constituted the 'least culpable act' satisfying the count of conviction . . . unless reliable records establish that the prior conviction was under one of the violent prongs of the statute."). The Government disagrees with Defendant's characterization of the judicial confession, and argues that Defendant's admission that he committed "each and every element of the charged offense" is sufficient to find he admitted to *both* offenses pursuant to *United States v. Uribe*, 838 F.3d 667 (5th Cir. 2016). (Dkt. 22 at 2 n.2). The Government also argues that the arrest affidavit demonstrates that Defendant committed both offenses. (*Id.*).

First, the court does not agree with the Government that the arrest affidavit clearly demonstrates that Defendant entered the residence in question with any specific intent, as opposed to entering without consent and then committing a theft. The affidavit simply conveys that Defendant confessed to stealing items from the residence, not that he entered with the intent to steal them.

Second, the court turns to the Fifth Circuit cases raised by the parties: *United States v. Conde-Castaneda*, 753 F.3d 172 (5th Cir. 2014), and *United States v. Uribe*, 838 F.3d 667 (5th Cir. 2016). In *Conde-Castaneda*, the defendant's judgment stated only that he had violated § 30.02(a), while the indictment charged him with violating both § 30.02(a)(1) and § 30.02(a)(3). 753 F.3d at 177. At issue was whether the defendant's "boiler plate judicial confession" that he had "committed each and every act alleged [in the indictment]" was sufficient to establish that he had been convicted under § 30.02(a)(1). *Id.* at 177–78. Ultimately, the Fifth Circuit determined that the defendant's "judicial confession adequately established that he was convicted of violating all the offenses listed in the indictment, including § 30.02(a)(1)." *Id.* at 178. In reaching this decision, the Fifth Circuit noted that it had applied similar logic in a number of other cases involving "template confessions" wherein defendants had admitted to all the allegations in an indictment, even though the indictment alleged

9

conduct both sufficient and insufficient to qualify for an enhancement. *Id.*; *see United States v. Valdes*, 403 F. App'x 885, 893 (5th Cir. 2010) (finding defendant's judicial confession that he "committed *each and every allegation* [the indictment] contains . . . sufficient to establish that he was convicted of generic burglary" where indictment had charged him under both § 30.02(a)(1) and § 30.02(a)(3)); *United States v. Chapman*, 431 F. App'x 337, 338 (5th Cir. 2011) (same result where confession stipulated that defendant committed "each allegation in the indictment"); *United States v. Cervantes-Aguilar*, 463 F. App'x 256, 258 (5th Cir. 2012) (same result where defendant "stipulated that he committed all of the allegations in the indictment, which included the elements of both burglary offenses").

Defendant acknowledges that *Conde-Castaneda* involved a similar judgment, indictment, and judicial confession as those at issue here, but contends that his circumstances are distinguishable. He argues that while the confession in *Conde-Castaneda* stated that the defendant was admitting "each and every allegation in the indictment," his confession admits only "each and every element of the charged offense." His confession, which is not a "blanket statement[] that all of the allegations in the indictment were accepted and admitted," purportedly sets it apart from that in *Conde-Castaneda*. (Dkt. 21 at 8).

The Government responds that *United States v. Uribe* resolves the issue. There, the defendant's judgment again listed only § 30.02(a), while the indictment contained language tracking both § 30.02(a)(1) and § 30.02(a)(3). *Uribe*, 838 F.3d at 669 n.1. Rather than an admission to "each and every allegation" in the indictment, the defendant's judicial confession, like the indictment, contained language tracking offenses under both § 30.02(a)(1) and § 30.02(a)(3). *See id.* at 669. The judicial confession also contained a statement that the defendant admitted to having "committed *the offense* with which I am charged exactly as alleged in the indictment." *See* 838 F.3d at 669, 71; Fifth Circuit No. 15-51223 Ex. A to motion to supplement ROA (emphasis added). The Fifth Circuit

found compelling "the connection between [the defendant's] judgment, the judicial confession[,] and the indictment," and held that together they showed the defendant confessed to the generic offense of burglary. *Id.* at 669 & n.1.

Neither *Conde-Castaneda* nor *Uribe* presented a judicial confession identical to that at issue here. As Defendant correctly points out, the "each and every" in his confession applies only to the "elements of the charged offense," not to "all of the allegations in the indictment," as was the case in *Conde-Castaneda*. And like the judicial confession in *Uribe*, Defendant's confession states that he admitted to "the offense" in the singular, but unlike in *Uribe*, does not repeat language tracking both § 30.02(a)(1) and § 30.02(a)(3). It may be conceivable, then, that a defendant's judicial confession admitting to "the offense" in an indictment charging both offenses in the conjunctive, absent a statement in the confession that admits to both offenses in the conjunctive, does not lead to the conclusion that they were convicted under § 30.02(a)(1). The court thinks it more likely, however, that the Fifth Circuit would consider this "pointing to distinctions without a difference." *See Uribe*, 838 F.3d at 669 n.1. If Defendant's conviction was for a "burglary" under 8 U.S.C. § 1101(a)(43)(G), then his motion must be denied—he has not otherwise argued that the expedited removal proceedings were carried out improperly, and "[c]learly the expedited statutory [removal] scheme comports with the minimum requirements of due process pronounced by the Supreme Court." *United States v. Benitez-Villafuerte*, 186 F.3d 651, 657–58 (5th Cir. 1999).

In any event, the court need not definitively answer whether Defendant's conviction was for a "burglary" under 8 U.S.C. § 1101(a)(43)(G). Even if Defendant is correct that which type of burglary he was convicted of is unclear and that the court should therefore assume he was convicted under § 30.02(a)(3), that offense is still an "aggravated felony." This is because the INA defines the term "aggravated felony" as encompassing not only generic burglary under 8 U.S.C. § 1101(a)(43)(G), but also "a crime of violence (as defined in section 16 of Title 18, but not

11

including a purely political offense) for which the term of imprisonment [*sic*] at least one year" under 8 U.S.C. § 1101(a)(43)(F). Section 16 of Title 18 explains that "[t]he term crime of violence" means":

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.[4]

In applying this definition to burglary of a habitation, the Fifth Circuit has explained that "*[w]henever* a private residence is broken into, there is *always* a substantial risk that force will be used." *United States v. Flores*, 875 F.2d 1110, 1113 (5th Cir. 1989) (emphasis added). This means that "burglary of a habitation under the Texas Penal Code is always a crime of violence under the definition in 18 U.S.C. § 16, obviating the need for a district court to consider the factual context of such a conviction." *See Molina-Ramirez v. Holder*, 362 F. App'x 387, 391 (5th Cir. 2010) (citing *United States v. Guadardo*, 40 F.3d 102, 104 (5th Cir. 1994)); *see also United States v. Claiborne*, 132 F.3d 253, 256 (5th Cir. 1998) (emphasizing that anyone who commits unauthorized entry of an inhabited dwelling poses a risk of force). Accordingly, in *United States v. Valdez*, 671 F. App'x 297, 298 (5th Cir. 2016), the Fifth Circuit found that the defendant's conviction for burglary of a habitation was a "'crime of violence' pursuant to § 16(b) and, thus, an 'aggravated felony' under § 1101(a)(43)(F)," where the defendant had not entered into a plea agreement, the judgment listed only § 30.02(a), and the indictment charged him with violating both § 30.02(a)(1) and § 30.02(a)(3). Similarly, in *United States v. Trevino-Rodriguez*, the Fifth Circuit held that 18 U.S.C. § 16(b) "can be straightforwardly applied" to a conviction for burglary of a habitation under Texas Penal Code § 30.02(a)(3) because the "crime of [burglary of a habitation] is one society condemns as violent because it involves a substantial risk

---

[4] The Fifth Circuit has recently affirmed the constitutionality of 18 U.S.C. § 16(b) in the wake of *Johnson v. United States*, ––– U.S. ––––, 135 S.Ct. 2551 (2015). *See United States v. Gonzalez–Longoria*, 831 F.3d 670 (5th Cir. 2016) (en banc).

12

that, in the course of its commission, force will be used against another." —— F. App'x ——, 2017 WL 128071, at *1 (5th Cir. Jan. 12, 2017). As a result, "a conviction for burglary of a habitation in violation of Texas Penal Code § 30.02(a)(3) . . . [is] a crime of violence under 18 U.S.C. 16(b) and thus an aggravated felony under 8 U.S.C. § 1101(a)(43)(F)." *Id.*; *see United States v. Trevino-Rodriguez*, 463 F. App'x 305, 308 (5th Cir. 2012) (explaining that a conviction under § 30.02(a)(3) allows for application of the "aggravated felony" enhancement for sentencing guidelines purposes; the guidelines at that time defined "aggravated felony" as having the meaning given that term in the INA).

### b. Whether the Possibly Erroneous Citation Invalidates the 2009 FARO

As discussed above, Defendant was correctly classified as having been convicted of an aggravated felony. If his conviction fell under 8 U.S.C. § 1101(a)(43)(G), the inquiry is at an end. On the other hand, if the Notice and FARO incorrectly identified his burglary of a habitation as an aggravated felony under 8 U.S.C. § 1101(a)(43)(G), rather than under 8 U.S.C. § 1101(a)(43)(F), the question of suppression remains. In that scenario, however, the court finds that Defendant cannot show that such an error prejudiced him.

"A showing of prejudice means 'there was a reasonable likelihood that but for the errors . . . the defendant would not have been [removed].'" *Benitez-Villafuerte*, 186 F.3d at 658–59 (quoting *United States v. Estrada-Trochez*, 66 F.3d 733, 735 (5th Cir. 1995)). An alien convicted of an aggravated felony is "'conclusively presumed to be [removable] from the United States' under [8 U.S.C.] § 1228(c)" and such removal is generally "a foregone conclusion." *Id.* at 659 (quoting 8 U.S.C. § 1228(c)); *see United States v. Perez-Ponce*, 62 F.3d 1120, 1122 (finding no prejudice where defendant had been convicted of an aggravated felony; "whatever the procedural defects at his [removal] hearing, the [defendant] would have had no chance of winning an appeal"). "In short, '[i]f the defendant was legally [removable] and, despite [DHS's] errors, the proceeding could not have

yielded a different result, the deportation is valid for purposes of section 1326.'" *Id.* (quoting *United States v. Galicia-Gonzalez*, 997 F.2d 602, 603 (9th Cir. 1993)); *see United States v. Alvarado-Pineda*, 774 F.3d 1198, 1201 (9th Cir. 2014) ("As a general matter, a defendant who has been convicted of an aggravated felony cannot show that he was prejudiced by defects in his underlying proceedings . . . . This is so because noncitizens convicted of aggravated felonies are removable on that basis . . . and are ineligible for almost all forms of discretionary relief.").

Here, Defendant was removable for having committed an aggravated felony and the Notice and FARO identified the underlying offense which was alleged to be an aggravated felony. Accordingly, any misidentification of the category of aggravated felony encompassing Defendant's offense did not prejudice him. *See Zaidi v. Ashcroft*, 374 F.3d 357, 359–60 & n.2 (5th Cir. 2004) (rejecting the defendant's allegation "that he was not given reasonable notice of the charges against him because [DHS] initially charged him with removability under the wrong provision of § 1101(a)(43)" and finding he had "presented no evidence . . . that the improper citation contained in the initial notice prejudiced him during the expedited removal proceeding" where his offense was properly considered an aggravated felony under a different provision); *Bovkun v. Ashcroft*, 283 F.3d 166, 169 (3d Cir. 2002) (finding that defendant was not prejudiced where FARO correctly indicated that offense of making terroristic threats was an aggravated felony but erroneously pointed to source of classification as 8 U.S.C. § 1101(a)(43)(G) rather than 8 U.S.C. § 1101(a)(43)(F)); *Alvarado-Pineda*, 774 F.3d at 1202–03 (where notice and FARO to defendant stated his offense was aggravated felony under 8 U.S.C. § 1101(a)(43)(F) and district court had agreed, declining to address the applicability of 8 U.S.C. § 1101(a)(43)(F), finding that defendant's offense was aggravated felony under 8 U.S.C. § 1101(a)(43)(G), and concluding that "[b]ecause . . . [defendant] was convicted of an aggravated felony . . . we need not decide whether his underlying removal proceedings were defective . . . . [and] "[b]ecause he [was] ineligible for relief, he suffered no prejudice from any procedural defects that

may have occurred"); *Ingleton v. Holder*, 529 F. App'x 41, 42 (2d Cir. 2013) (finding no prejudice where defendant was convicted under two-way divisible criminal statute, government charged him with aggravated felony under subparagraph of 8 U.S.C. § 1101(a)(43) applicable to only one version of the crime, and IJ sua sponte invoked different subparagraph applicable to second version of the crime in order to find that any ambiguity regarding which version defendant had pleaded to did not preclude determination that his conviction was for an aggravated felony).

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the indictment (Dkt. 21) is **DENIED**.

**SIGNED** on May 26, 2017.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE